UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

JOHN P.[1],                              )
                                         )
            Plaintiff,                   )
                                         )
    v.                                   )       CIVIL NO.  2:19cv0004
                                         )
ANDREW SAUL,                             )
Commissioner of Social Security,         )
                                         )
            Defendant.                   )

<u>OPINION AND ORDER</u>

This matter is before the court for judicial review of a final decision of the defendant
Commissioner of Social Security Administration denying Plaintiff's application for Disability
Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social
Security Act. 42 U.S.C. § 423(a), § 1382c(a)(3).  Section 405(g) of the Act provides, inter alia,
"[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the
record including the evidence upon which the findings and decision complained of are based.
The court shall have the power to enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without
remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to
any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an
"inability to engage in any substantial gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to last for a continuous period of not less
than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental

_____

    [1]  To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.      The claimant meets the insured status requirements of the Social Security Act

through September 30, 2018.

2.    The claimant has not engaged in substantial gainful activity since October 16, 2014 the alleged onset date (20 416.971 *et seq.*).

3.    The claimant has the following "severe" impairments: dysfunction of major joints; obesity; degenerative disc disease; and chronic obstructive pulmonary disease (COPD)(20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b).  Specifically, he can lift and carry 10 pounds frequently and 20 pounds occasionally, sit 6 hours in and [sic] 8-hour workday, and stand/walk 6 hours in an 8-hpour [sic] workday.  The claimant is limited to frequent operation foot controls with the left lower extremity.  The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds.  He can occasionally stoop, kneel, crouch, and crawl.  The claimant can never work at unprotected heights or around moving mechanical parts.  He should avoid even moderate exposure to dust, odors, fumes and pulmonary irritants.

6.    The claimant is capable of performing past relevant work as a Security Guard.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from October 16, 2014, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 12 - 22 ).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review.  This appeal followed.

Plaintiff filed his opening brief on May 15, 2019.  On July 23, 2019, the defendant filed a

memorandum in support of the Commissioner's decision, to which Plaintiff replied on August 19, 2019. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step four was the determinative inquiry.

Between October 2014 and January 2017, Plaintiff treated at Robbins Health Center for diabetes mellitus, diabetic nephropathy, degenerative joint disease, osteoarthritis, obesity, hypertension, hyperlipidemia and depression. (AR 373- 76, 409-413, 474-76, 524-59.) During a psychiatric evaluation in March 2015, Plaintiff complained of depression. (AR 401.) His symptoms included low mood and poor energy. (AR 401.) He stated that his primary care physician started him on Prozac in February 2015. (AR 402.) Examining psychiatrist R. Hall-Ngorima, MD, observed depressed mood and affect, and diagnosed depressive disorder. (AR

403.)

At the request of the Social Security Agency, Plaintiff underwent an internal medicine consultative examination in June 2015. Plaintiff complained of elevated blood glucose levels, left knee pain and depression. (AR 423-24.) Consultative examiner R. Kharwadkar, MD noted that Plaintiff was 70 ¼ inches tall and weighed 332.1 pounds. (AR 424.) Dr. Kharwadkar also observed that he had an abnormal and limping gait to the left. (AR 425.) Dr. Kharwadkar diagnosed morbid obesity, arthritis of left knee, diabetes mellitus, hypertension, dyslipidemia, possible diabetic neuropathy and hypoventilation. (AR 426.)

A lumbar x-ray from June 2015 showed osteoarthritic degenerative changes of the lumbar spine. (AR 433.) A right knee x-ray from June 2015 revealed mild to moderate patellofemoral osteoarthritic degenerative changes. (AR 434.) In addition, an echocardiogram from July 2015 showed left ventricular enlargement with moderate concentric hypertrophy, grade 1 diastolic dysfunction and mild to moderate left atrial enlargement. (AR 441-42.)

At the request of the Agency, Plaintiff underwent a psychological consultative examination in July 2015. (AR 454.) Consultative examiner W. Skoubis, Psy.D. observed that Plaintiff exhibited flat mood, constricted affect and slow psychomotor activity (AR 454-55), and diagnosed depressive disorder. (AR 456.) Dr. Skoubis opined that Plaintiff could not manage his own finances. (AR 456.)

During an endocrinology visit in April 2016, Plaintiff complained of right leg pain. (AR 587.) The physician noted that Plaintiff's blood glucose level was not at target and noted that if his blood sugars did not improve, he would be prescribed insulin. (AR 589.) In September 2016, Plaintiff's A1c was 9.601 and he was diagnosed with uncontrolled type 2 diabetes mellitus. (AR

516-17.) During a follow up December 2016, Plaintiff had a BMI of 49 kg/m2. (AR 522.) The examining physician diagnosed uncontrolled diabetic mellitus and morbid obesity. (AR 523.)

At the request of the Agency, Plaintiff underwent another psychological consultative examination in April 2017. He complained of depressed mood, anxiety and mood swings. (AR 633.) Consulting psychologist M. O'Danovich, Ph.D. observed that Plaintiff could not complete serial sevens and erred in basic subtraction. (AR 632.) Dr. O'Danovich diagnosed major depressive disorder and opined that Plaintiff had mild limitations in carrying out simple instructions, moderate limitations in understanding, remembering and carrying out complex instructions, and marked limitations in making judgments on complex work-related decisions; in addition, Dr. O'Danovich opined that Plaintiff had mild limitations in interacting appropriately with supervisors and co-workers and in responding appropriately to usual work situations and to changes in a routine work setting. (AR 636-37.)

Plaintiff testified that he was unable to work due to chest pain and shortness of breath with even mild physical exertion such as walking. (AR 118.) He suffered from back pain, knee pain, swelling in his ankles and legs and numbness in his hands and feet. (AR 110, 111, 112, 113.) His family members drove him to his appointments. (AR 96.) He was helped out financially by his family members to pay rent and buy groceries. (AR 97, 99.) He could cook and do his laundry. (AR 100.) He took naps for a few hours every day after lunch. (AR 115.) He spent majority of his day in his recliner. (AR 115.) At his security guard job, he used to stand and walk for prolonged periods, make rounds and climb stairs. (AR 105.) He had to check the premises, garages, gates, doors and offices. (AR 105.) He had to make sure that no was loitering or trespassing on the property. (AR 105.) He worked overnight and called the police if he observed

any suspicious activity. (AR 105.) He was unable to perform his job because he was falling behind on his work, and could not make the rounds due to the pain in his knees, numbness and swelling in his feet, ankles and legs. (AR 106, 107.) He had difficulty walking, climbing stairs and staying alert at his job. (AR 107.) He was let go from his security guard job because his employer felt he was too slow. (AR 105-06.)

The ALJ found as follows: Plaintiff had the severe impairments of dysfunction of major joints, obesity, degenerative disc disease and chronic obstructive pulmonary disease (COPD). (AR 33.) Plaintiff's medically determinable impairment of depression was non-severe. (AR 33-34.) Plaintiff had the residual functional capacity to perform light work with the following exceptions: he could lift and carry 10 pounds frequently and 20 pounds occasionally; he could sit for six hours in an eight-hour workday, he could stand and/or walk for six hours in an eight-hour workday; he was limited to frequent operation foot controls with the left lower extremity; he could occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes or scaffolds. (AR 27.) He could never work at unprotected heights or around moving mechanical parts and he should avoid even moderate exposure to dust, odors, fumes and pulmonary irritants. (AR 37.) The ALJ determined that Plaintiff was capable of performing his past relevant work as a security guard. (AR 41.)

In support of remand, Plaintiff first argues that the ALJ failed to properly evaluate his mental impairments. The ALJ found Plaintiff's medically-determinable impairment of depression to be non-severe, causing mild limits in understanding, remembering or applying information, interacting with others and concentrating, persisting or maintaining pace. (AR 33, 35.) However, the ALJ did not include any related limits – no limits in mental health functioning at all – in the

RFC assessment. (AR 37.) In making a RFC determination, an ALJ "must consider all allegations of physical and mental limitations or restrictions ... and the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' " SSR 96–8p; see also 20 C.F.R. § 404.1523 ("[W]e will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir.2003) (indicating that the ALJ must consider the aggregate effect of all alleged impairments-"including those impairments that in isolation are not severe."); *Verlee v. Astrue*, 1:12-CV-45-TLS-RBC, 2013 WL 1760810, at *3 (N.D. Ind. Apr. 24, 2013); *Jones v. Astrue*, 2:12-CV-00143, 2013 WL 816170, at *7 (N.D. Ind. Mar. 4, 2013) Thus, the ALJ was required to fully consider Plaintiff's mental impairments when assessing his RFC, regardless of their severity. *See* 20 C.F.R. § 404.1523; *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

"Even a non-severe impairment can put a disproportionately greater strain on a person who concurrently is suffering from a more severe affliction". *Young v. Barnhart*, 362 F.3d 995, 998 (7th Cir. 2004) ("The examiner noted at the time that although neuropsychological testing showed only a mild impairment, in practice it translated into a significant impairment for Young in his social and occupational life."); *Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010); *Villano v. Astrue*, 556 F.3d 563 (7th Cir. 2009). In the present case, even though the ALJ found that Plaintiff had mild limits in understanding, remembering or applying information and concentrating, persisting or maintaining pace (AR 35), he failed to include these limitations in Plaintiff's RFC finding. (AR 37.) This issue is relevant because non-severe mental impairments causing even mild limitations in understanding, remembering or applying information and

concentrating, persisting or maintaining pace can impact an individual's ability to perform past semi-skilled work, such as the security guard work Plaintiff performed. *Winfield v. Commissioner of Social Sec.*, 2013 WL 692408, *3 (N.D. Ind. 2013): "I think that Winfield is pretty clearly right on at least one of her claims—that the ALJ fundamentally erred when he failed to consider her non-severe mental impairments when assessing her residual functional capacity. Therefore, I have no choice but to remand this case back to him." The Court went on to find:

> Even a mild impairment can put a disproportionately greater strain on a person who concurrently is suffering from a more severe affliction. *See Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). It's the combination of the maladies that must be considered, and "[a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (emphasis added); accord *Golembiewski*, 322 F.3d 918.

*Winfield*, at *4-5. *Accord Underwood v. Colvin*, No. 2:11-CV-354-JD-PRC, 2013 WL 2420874 at *1 (N.D. Ind. May 30, 2013):

> . . . the ALJ here concluded that Underwood's mental limitations, stemming from mild depression and pain, were, in fact, credible. On these facts, the ALJ's decision to limit Underwood to unskilled work, rather than including her mental limitations into her RFC specifically or incorporating them properly by proxy, was in error.

*See also Cannon v. Berryhill*, 1:18CV203, 2019 WL 1011872, at *7–8 (N.D. Ind. Mar. 4, 2019) ("However, even assuming, *arguendo*, that Plaintiff's depression did not individually warrant a severity finding, remand is still necessary as the ALJ failed to consider what effect Plaintiff's "longstanding depression" had on her other "severe" impairments (e.g., fibromyalgia, a back condition, a neck condition, and obesity………Clearly, the ALJ's analysis is critically flawed in that he did not consider whether and how Plaintiff's depression may relate to her other severe impairments…… A large component of Plaintiff's claim is premised on her pain, which

inherently affects a person's mental functioning."); *Kinsey v. Berryhill*, No. 2:16-CV-69-PRC, 2017 WL 1101140, at *9 (N.D. Ind. Mar. 24, 2017); *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011); *Koswenda v. Astrue*, 2009 WL 958542, at *5 (N.D. Ill. Apr. 2, 2009).

Plaintiff argues that the record consistently documents Plaintiff's depressive symptoms. During a psychiatric evaluation in March 2015, Plaintiff complained of low mood and poor energy. (AR 401.) He stated that his primary care physician started him on Prozac in February 2015. (AR 402.) Examining psychiatrist R. Hall-Ngorima, MD, observed depressed mood and affect, and diagnosed depressive disorder. (AR 403.) During a psychological consultative examination in July 2015, consultative examiner W. Skoubis, Psy.D. observed that Plaintiff exhibited flat mood, constricted affect and slow psychomotor activity. (AR 454-55.) Dr. Skoubis diagnosed depressive disorder and opined that Plaintiff would not be able to manage his own finances due to his mental condition. (AR 456.)

During another psychological consultative examination in April 2017, Plaintiff complained of depressed mood, anxiety and mood swings. (AR 633.) Consulting psychologist M. O'Danovich, Ph.D. observed that Plaintiff could not complete serial sevens and erred in basic subtraction. (AR 632.) Dr. O'Danovich diagnosed major depressive disorder and opined that Plaintiff had mild limitations in carrying out simple instructions, moderate to marked limitations in understanding, remembering and carrying out complex instructions and making complex decisions; in addition, Dr. O'Danovich opined that Plaintiff had mild limitations in interacting appropriately with supervisors and co-workers and in responding appropriately to usual work situations and to changes in a routine work setting. (AR 636-37.) In a function report from April 2015, Plaintiff noted that his conditions affect his memory, concentration and his ability to follow

instructions and complete tasks. (AR 308.)

Plaintiff contends that the ALJ's error in failing to properly consider Plaintiff's mental impairments is not harmless; if the ALJ included moderate limits in understanding and applying remembering information and in concentration, persistence or pace, the vocational expert may have testified that Plaintiff could not return to his security guard position, a job requiring checking premises, gates, calling police if unusual activity expected. And if Plaintiff could not do his past work as a security guard, the ALJ would have to determine whether or not Plaintiff was disabled under the medical vocational guidelines. As the regulations explain, based on a non-mechanical application of the medical vocational guidelines, individuals of Plaintiff's age (54 years 8 months old7) who are restricted to light work, who can no longer perform past relevant work and have no transferable skills, are found disabled based on the Medical Vocational Guideline 202.06 (20 C.F.R. Part 404, Subpt. P, Appendix 2, Table No. 2, Rule 202.06.) Thus, even if Plaintiff is found capable of light work, a finding of disability is warranted based on a non-mechanical application of the Medical Vocational Guideline 202.06.

Plaintiff further argues that the ALJ failed to properly evaluate the opinion of consultative examiner M. O'Danovich, Ph.D. who opined that Plaintiff had mild limitations in carrying out simple instructions, moderate limitations in understanding, remembering and carrying out complex instructions and marked limitations in making judgments on complex work-related decisions, and mild limitations in interacting appropriately with supervisors and co-workers and in responding appropriately to usual work situations and to changes in a routine work setting. (AR 636-37.) The ALJ afforded Dr. O'Danovich's opinion partial weight and noted that her opinion was generally consistent with the evidence of the record. (AR 34.) However, the ALJ rejected Dr.

O'Danovich's opinion that Plaintiff had moderate limitations in understanding, remembering and carrying out complex instructions and marked limitations in making judgments on complex work-related decisions without a logical explanation. (AR 34.) *Terry*, 580 F.3d 475 (The ALJ is required to build a "logical bridge" between the evidence and his conclusions); *Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014). Plaintiff contends that the ALJ cherry-picked Dr. O'Danovich's opinion by accepting portions of Dr. O'Danovich's opinion and rejecting the portion favorable to Plaintiff. This "sound-bite" approach to record evaluation is an impermissible methodology for evaluating the evidence. *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir.1982) ("But it is equally clear that an ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion."); *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir.2014). Plaintiff points out that a person who has to decide if police must be called cannot do the job of a security guard if he is markedly limited in making judgments. The ALJ found that Dr. O'Danovich's opinion regarding Plaintiff's inability to make complex judgments is not supported by his ability to pay bills, use a check book and grocery shop. (AR 34.) But, the fact that Plaintiff can occasionally engage in these activities does not mean that he is not limited in carrying out complex instructions and making complex decisions in a workplace setting. *Golembiewski*, 322 F.3d at 915 (The Commissioner's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998) ("[the ALJ's] opinion fails to build a bridge from the evidence to the conclusion and is thus analytically inadequate – in a word, unreasoned – we cannot uphold his decision.").

In response, the Commissioner argues that the ALJ reasonably found that Plaintiff's depression was non-severe and did not cause functional limitations. First, the Commissioner

contends that the record does not support a finding that Plaintiff's depression caused more than a minimal limitation in his ability to perform basic mental work activities. However, the record reveals that Plaintiff suffered from signs and symptoms of depression during the period at issue: low mood, mood swings, poor energy and anxiety. (AR 401, 633.) Supportive clinical findings include: depressed mood and affect, flat mood, constricted affect and slow psychomotor activity. (AR 403, 454-55.) Considering this evidence, the ALJ clearly erred by failing to include any mental health limitations in her RFC assessment. *See* 20 C.F.R. § 404.1523 ("[W]e will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."); SSR 96–8p (In making a RFC determination, an ALJ "must consider all allegations of physical and mental limitations or restrictions ... and the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir.2003) (indicating that the ALJ must consider the aggregate effect of all alleged impairments-"including those impairments that in isolation are not severe.").

Second, the Commissioner relies on an office note from June 2015 to argue that Plaintiff's depression was stable. (Tr. 448)  But the Commissioner failed to properly review the office note which showed that Plaintiff's dosage of Prozac was increased to 40 mg the previous month. (AR 448.) *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (When an ALJ evaluates a claimant's subjective allegations, an ALJ's error is harmless only "…when the trier of fact says that he would have made the same determination even if the questioned circumstances had been different from what he thought them to be and he gives an adequate reason for that back-up position.") Moreover, "[t]here can be a great distance between a patient who responds to treatment and one

13

who is able to enter the workforce." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). *See also Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2010) ("The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled."); *Hutsell v. Massanari*, 259 F.3d 707, 713 (8th Cir. 2001) ("We also believe that the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well', because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity").

Third, the Commissioner argues that Plaintiff had never been to therapy. But the Commissioner's rulings require an ALJ to question a claimant about his treatment motivations/ decisions before drawing a negative inference about a claimant's subjective allegations based on a claimant's failure to aggressively pursue treatment. *See e.g., Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir.2008); SSR 16-3p. Here, the ALJ failed to properly question Plaintiff about the lack of treatment with a mental health therapist. (AR 124.)

Fourth, the Commissioner asserts that the ALJ did not err by accepting and rejecting different portions of consulting psychologist Dr. O'Danovich's opinion. After an in-person examination in April 2017, Dr. O'Danovich opined that Plaintiff had mild limitations in carrying out simple instructions, moderate to marked limitations in understanding, remembering and carrying out complex instructions and making complex decisions and mild limitations in interacting appropriately with supervisors and co-workers and in responding appropriately to usual work situations and to changes in a routine work setting. (AR 636-37.) The ALJ afforded

14

Dr. O'Danovich's opinion partial weight, noted that her opinion was generally consistent with the evidence of the record but rejected Dr. O'Danovich's opinion that Plaintiff had moderate limitations in understanding, remembering and carrying out complex instructions and marked limitations in making judgments on complex work-related decisions without a logical explanation. (AR 34.) In support of his argument, the Commissioner relies on the cases of *Norem v. Colvin*, No. 3:14-cv-1997, 2015 WL 6136108, at *6 (N.D. Ind. Oct. 19, 2015) and *Sutherland v. Astrue*, No. 2:11-cv-24, 2012 WL 911898, at *10 (N.D. Ind. Mar. 15, 2012): But, in *Norem* and *Sutherland*, the ALJ rejected the medical opinions. *Norem*, 2015 WL 6136108, at *5; *Sutherland*, 2012 WL 911898, at *10. And in Plaintiff's case, the ALJ assigned "partial weight" and not "little weight" to the opinion of Dr. O'Danovich. Thus, the ALJ erred by cherry-picking Dr. O'Danovich's opinion. She accepted portions of Dr. O'Danovich's opinion but rejected the portion favorable to Plaintiff. *See Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir.1982) ("But it is equally clear that an ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion."); *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir.2014).

The ALJ's error in failing to properly consider Plaintiff's mental impairments was not harmless because if the ALJ included moderate limits in understanding, applying and remembering information and in concentration, persistence or pace, the vocational expert may have testified that Plaintiff could not return to his security guard position. If Plaintiff could not do his past work as a security guard, the ALJ would have to determine whether or not Plaintiff was disabled under Medical Vocational Guideline 202.06. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (an error is harmless only "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the

record though the agency's original opinion failed to marshal that support"). Accordingly, remand is appropriate on this issue.

Next, Plaintiff argues that the ALJ erred in failing to consider his extreme obesity in combination with his other impairments. The ALJ found Plaintiff's obesity to be a severe impairment and noted that she considered his obesity in relation to the musculoskeletal, respiratory and cardiovascular body systems as required by SSR 02-1p. (AR 33, 37.) Clearly, however, a boilerplate statement that Plaintiff's obesity was considered in combination with his other impairments is not an adequate explanation. *Parker v. Colvin*, 2016 WL 4435622 *4 (N.D. Ind. Aug. 22, 2016) (remanding where the ALJ made the single statement that "the claimant's obesity was considered in relation so the musculoskeletal, respiratory, and cardiovascular body systems listings as required by the Ruling" and limited Plaintiff to light work with postural limitations. However, the ALJ did not create a logical bridge from the bare statement that he considered Plaintiff's obesity in combination with other limitations and what specific conclusions he came to regarding the limitations they cause"). *See also Mangan v. Colvin*, 2014 WL 1908937 *10 (N.D. Ill. May 13, 2014) (remanding where the ALJ failed to fully explain her decision regarding how the claimant's obesity impacted her functional capacity).

In the present case, the ALJ did not address how Plaintiff's obesity interacted with his other impairments. SSR 02-1p ("Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems."). SSR 02-1p states that the effect of obesity can be exacerbated with certain conditions, including joint related impairments. *Martinez v. Astrue*, 630 F.3d 693, 698-99 (7th Cir. 2011) ("It is one thing to

have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40."); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (The ALJ failed to analyze what effect Plaintiff's obesity had on her arthritis under S.S.R. 02–1p.); *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (quoting *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004) ("Even if Barrett's arthritis was not particularly serious in itself, it would interact with her obesity to make standing for two hours at a time more painful than it would be for a person who was either as obese as she or as arthritic as she but not both.").

This SSR 02-1p consideration is important in Plaintiff's case because he suffers from degenerative disc disease and dysfunction of major joints and experiences pain in his knees and back. (AR 373-76, 409-13, 423, 424, 433, 434, 474-76.) During the hearing, Plaintiff testified that he suffered from back pain and knee pain. (AR 112.) He explained that he was unable to perform his security guard job because he could not make the rounds due to the pain in his knees. (AR 107.) The ALJ also failed to consider the effect of obesity on Plaintiff's COPD. SSR 02-1p ("obesity affects the cardiovascular and respiratory systems because of the increased workload the additional body mass places on these systems. Obesity makes it harder for the chest and lungs to expand. This means that the respiratory system must work harder to provide needed oxygen. This in turn makes the heart work harder to pump blood to carry oxygen to the body. Because the body is working harder at rest, its ability to perform additional work is less than would otherwise be expected.") Plaintiff testified that he was unable to work due to chest pain and shortness of breath with even mild physical exertion such as walking. (AR 118.) Despite this evidence, the ALJ offered no explanation as to why she did not address the combination of Plaintiff's knee pain, back pain, shortness of breath and excessive weight on his ability to work. *Thomas v. Colvin*, 745

F.3d 802, 807 (7th Cir. 2014) ("combination of impairments could impose greater restrictions than any of Thomas's impairments taken singly.").

The Seventh Circuit decisions addressing SSR 02-1p do not support a finding Plaintiff would retain the ability to perform light work given his musculoskeletal and respiratory problems combined with his obesity which would impact his ability to stand and walk for prolonged periods. See SSR 02-1p ("Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling."); *Gentle*, 430 F.3d 865, 868 ("In considering the credibility of the obese woman's narrative of her ability to stand, sit, etc., the administrative law judge would have to determine the effect of her obesity on that ability."); *Barrett v. Barnhart*, 355 F.3d 1065, 1068-69 (7th Cir. 2004) (ruling that the ALJ's decision failed to analyze how, given her obesity and arthritic knees, plaintiff could be on her feet for a sufficient period to perform light work.)

Plaintiff testified that he experienced pain in his back and knees which affect his ability to walk. (AR 107, 112.) He also testified that he becomes dizzy and has trouble breathing with even mild exertion. (AR 113-14.) Despite this evidence, the ALJ did not explain why she rejected Plaintiff's alleged standing and walking limitations especially given back and knees issues, breathing problems and excessive weight. If the ALJ thought that Plaintiff's obesity has not resulted in limitations on his ability to stand and walk, she should have explained how she reached that conclusion. *Arnett v. Astrue*, 676 F.3d 586 (7th Cir. 2012). The ALJ noted that during the consultative examination in June 2015, Plaintiff was able to move around the examination room without difficulty. (AR 39.) But the ability to walk around a doctor's office

does not equal the ability to stand or walk for 6 hours out of an 8-hour workday. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (observing that the ability to walk 50 feet without a cane in a doctor's office "hardly demonstrates an ability to stand for 6 hours."); *Garth v. Berryhill*, 2:16-CV-428-PRC, 2018 WL 5307231, at *7 (N.D. Ind. Oct. 26, 2018) (Plaintiff's ability to handle and finger sometimes does not support the ALJ's finding that Plaintiff would be able to use her hands "frequently" as defined by the regulations.)

Nevertheless, the only specific reason the ALJ found for Plaintiff's ability to stand and walk for 6 hours in an 8-hour workday was his ability to walk around the examination room "without apparent hesitation, difficulty or discomfort". (AR 39.) But, given Plaintiff's back pain, knee pain, shortness of breath and his obesity, there was no basis for the ALJ determine that he could be on his feet 6 out of 8 hours.

Moreover, the ALJ did not directly address how she determined that Plaintiff could stand and walk for more than 4 hours per day. This is relevant because if Plaintiff could not be on his feet for 4 hours per day, the vocational expert testified that he could not perform any of the light jobs (AR 128) and Plaintiff would be found disabled at the sedentary level, according to Medical Vocational Rule 201.14. (AR 128.)

In response, the Commissioner asserts that the ALJ properly evaluated Plaintiff's obesity in combination with his other impairments. The Commissioner contends that throughout the ALJ's decision, the ALJ provided an explanation for how she evaluated Plaintiff's obesity, and the limitations she incorporated into the RFC. . While the ALJ discussed how obesity could theoretically affect a claimant's ability to perform work tasks, the ALJ did not discuss how Plaintiff's obesity, either by itself or in combination with Plaintiff's additional medically

determinable impairments, affected his ability to perform work tasks. An ALJ is required to consider the combined effects of a claimant's medically determinable impairments, including the effects that a claimant's obesity has on a claimant's additional impairments. SSR 02-1p. *Accord Goins*, 764 F.3d at 681; *Golembiewski*, 322 F.3d 918. Obesity can have a particularly severe aggravating effect on a claimant's musculoskeletal impairments and the Seventh Circuit has found error where an ALJ fails to explain how a claimant's obesity did not cause her musculoskeletal and respiratory impairments to be more significantly limiting. SSR 02-1p. *See Martinez v. Astrue*, 630 F.3d 693, 698-99 (7th Cir. 2011); *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005); *Barrett v. Barnhart*, 355 F.3d 1065, 1068-69 (7th Cir. 2004). If an ALJ finds that a claimant's obesity neither causes nor contributes to additional functional restrictions, she must explain how she so reasoned. *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012).

In the present case, the ALJ failed to explain how she considered the effects of Plaintiff's obesity and failed to explain how she considered the aggravating effects of Plaintiff's obesity. While the ALJ found that, despite suffering obesity, Plaintiff could perform work at the light exertional level, the ALJ failed to explain how she so concluded. The ALJ failed to explain how she determined that Plaintiff could stand and walk for six hours in an eight-hour workday or that Plaintiff could lift and carry up to 20 pounds at one time where Plaintiff suffered obesity that could have rendered his back impairment, knee impairments and shortness of breath more significantly limiting. The ALJ did not explain why, given the combination of obesity, degenerative disc disease, dysfunction of major joints and COPD, Plaintiff should not have been restricted to work that was performed at the sedentary or the less than sedentary exertional level. *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) ("combination of impairments could impose

greater restrictions than any of Thomas's impairments taken singly."); *Barrett v. Barnhart*, 355 F.3d 1065, 1068-69 (7th Cir. 2004) (reversing where ALJ's decision failed to analyze how, given her obesity and arthritic knees, plaintiff could be on her feet for a sufficient period to perform light work.) The paucity of analysis of Plaintiff's obesity deprives the Court of the ability to discern if the ALJ actually considered the effect that obesity had on Plaintiff's additional impairments. Thus, remand is required on this issue.

Next, Plaintiff argues that the ALJ committed multiple errors with symptom evaluation. In evaluating Plaintiff's symptoms, the ALJ stated that his allegations were "not entirely consistent with the medical evidence and other evidence in the record" and "these statements have been found to affect the claimant's ability to work only to the extent they can be reasonably accepted as consistent with the objective medical and other evidence". (AR 39.) But, the ALJ's inclusion of the "not entirely consistent" and "reasonably accepted as consistent" language makes the ALJ's decision internally inconsistent as it implies two standards for evaluating the consistency of a claimant's allegations with the record. *Parker v. Astrue*, 597 F.3d 920, 924-25 (7th Cir. 2010) (decision cannot be upheld with significant contradictory conclusions by the ALJ). The "not entirely consistent" standard implies that the ALJ used a clear and convincing evidence standard. However, an ALJ must decide a case based upon a preponderance of the evidence standard.

The ALJ noted that although Plaintiff testified that due to the side-effects from his medications he had difficulty staying alert at his job, he was alert and oriented during his physical examinations. (AR 40.) However, just because Plaintiff was alert during his doctors' visits does not mean that he did not experience any side-effects from his medications. *Muzzey v. Berryhill*, 3:17-CV-796 JD, 2019 WL 697137, at *1 (N.D. Ind. Feb. 20, 2019) (The ALJ must provide a

logical bridge between the evidence and his conclusions.) *See also Dante v. Colvin*, 12 C 4381, 2013 WL 4442037, at \*12 (N.D. Ill. Aug. 16, 2013) (The ALJ's conclusion that claimant did not experience drowsiness from his medications must be based on medical evidence or his testimony).

The ALJ also remarked that Plaintiff's daily activities are not consistent with an individual who is unable to perform light work. (AR 40.) But the ALJ failed to identify which daily activity required Plaintiff to stand on his feet for more than 4 hours in an 8-hour day or lift and carry up to 20 pounds. Thus, the ALJ erred by failing to explain which daily activities supports the ALJ's finding that Plaintiff was capable of full-time light work. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence.); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits."); *Thompson v. Berryhill*, 2:18-CV-63-JEM, 2019 WL 632189, at \*2 (N.D. Ind. Feb. 14, 2019).

Further, Courts have repeatedly cautioned against equating daily living activities with the ability to perform a full day of work, as the former are often subject to different restraints (e.g., longer periods within which to complete and more frequent opportunities to rest) and at times can be avoided only at great personal cost. *Brown v. Colvin*, 845 F.3d 247, 253 (7th Cir. 2016). *See Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir.2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office."); *Gentle*, 430 F.3d 867 ("The administrative law judge's

casual equating of household work to work in the labor market cannot stand."). During the hearing, Plaintiff testified that his family members drive him to his appointments. (AR 96.) He was only able to do his laundry and cook. (AR 100.) He spent majority of his day in his recliner. (AR 115.) The ALJ did not cite any evidence to show that Plaintiff was exaggerating the effect of his impairments. *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) ("But it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether "testimony about the effects of his impairments was credible or exaggerated.").

The ALJ noted that the record contained minimal findings. (AR 40.) However, contrary to the ALJ's finding, the record supports Plaintiff's allegations of pain. The record is replete with evidence regarding Plaintiff's back pain, right knee pain, right leg pain and gait disturbances. (AR 423, 424, 425, 587.) Supportive diagnostic findings include a right knee x-ray from June 2015 which revealed mild to moderate patellofemoral osteoarthritic degenerative changes. (AR 434.) Furthermore, according to SSR 16-3p13, the ALJ will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual. Here, the ALJ failed to consider that Plaintiff's allegations of back and knee pain were supported by his morbid obesity, limited activities of daily living and prescription pain medication. SSR 16-3p (In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ would consider a claimant's daily activities, factors that precipitate and aggravate his symptoms and the type and dosage of medications).

As noted, Plaintiff indicated that he spends majority of his day in a recliner. (AR 115.)

Yet, the ALJ failed to properly analyze Plaintiff's need to rest throughout the day. *See Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir.2009) (finding that the ALJ was required to analyze plaintiff's fatigue); *Martinez v. Astrue*, No. 09–cv–62, 2009 WL 4611415, *12 (N.D.Ind. Nov. 30, 2009) (holding that the ALJ's failure to address plaintiff's need to lie down during the day constituted reversible error); *Cagle v. Colvin*, 2015 WL 416512 at *12 (N.D. Ind., Jan. 29, 2015) ("the ALJ did not sufficiently explain why Cagle's unrebutted fatigue and need for naps did not support her claimed limitations and inability to work.").

Lastly, the ALJ assigned "little weight" to the third-party function report completed by Plaintiff's father because he is not medically trained to make exacting observations regarding Plaintiff's symptoms. (AR 41.) In a function report dated May 26, 2015, Plaintiff's father noted that his son suffered from pain, weakness and dizziness and was unable to work due to his poor health. (AR 314.) He noted that Plaintiff did not do any outdoor work. (AR 316.) He noted that Plaintiff's condition affected his ability to lift, squat, bend, stand, walk, kneel, climb stairs, memory and ability to understand. (AR 319.) The ALJ's rejection of the function report completed by Plaintiff's father is in violation of SSR 16-3p which explains that other sources like family members "may provide information from which we may draw inferences and conclusions about an individual's statements that would be helpful to us in assessing the intensity, persistence, and limiting effects of symptoms." The ALJ also argued that Plaintiff's father could not be considered a "disinterested third party" and that he had a "natural tendency to agree with the symptoms and limitations" Plaintiff alleged. (AR 41.) Familial relationship alone, however, is an insufficient basis on which to reject such third-party reports. *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) ("The administrative law judge should have made clear whether he believed the

fiancée's testimony or not, or which part he believed, or whether he had no idea how much of what she said was worthy of belief.") The reasons proffered by the ALJ are generic and, if given full effect, would render the testimony or report of any family member meaningless. The ALJ did not further explain which parts of Plaintiff's father's Function report he accepted or rejected, warranting a remand. *See Natt v. Colvin*, 2:14-CV-81-JEM, 2015 WL 1418792, at *9 (N.D. Ind. Mar. 27, 2015); *Accord Varner v. Colvin*, 2:12-CV-485-PRC, 2014 WL 1152947, at *13 (N.D. Ind. Mar. 20, 2014) ("[I]t is troubling that the ALJ does not specify which parts of Ms. Varner's mother's testimony to which he gives some weight. . . . On remand, the ALJ shall explain which of Ms. Varner's statements he credits.").")

In response, the Commissioner argues that the ALJ reasonably evaluated Plaintiff's subjective allegations of disability. First, the Commissioner contends that the ALJ did not apply an improper standard with regard to Plaintiff's subjective allegations. The Commissioner reasons that even though the ALJ used boilerplate phraseology (not entirely consistent"), he provided several legitimate reasons for finding that Plaintiff's limitations were not as severe as he alleged. (Commissioner's Brief pg. 14) The use of the phrase "not entirely consistent" implied that, for the ALJ to have found any of Plaintiff's subjective allegations to have merit, Plaintiff needed to demonstrate that the allegations were entirely consistent with evidence. Application of this standard is inconsistent with regulations and precedent that hold that an ALJ must apply the preponderance of the evidence standard in proceedings. 20 C.F.R. § 404.953(a). *Accord Jones ex rel. Jones v. Chater*, 101 F.3d 509, 512 (7th Cir. 1996) (citation omitted). *See also, e.g., Minger v. Berryhill*, 307 F. Supp.3d 865, 872 (N.D. Ill. 2018) ("…however, the ALJ's boilerplate indicates that he will be assessing the claimant's symptoms under a different standard – 'entirely

consistent'– than required in the regulations 'reasonably...accept[able] as consistent.' As a result, the discussion following the boilerplate doesn't rescue the opinion, because the ALJ might be applying the wrong standard in that discussion"). The preponderance of the evidence standard requires an ALJ to accept a fact where relevant evidence as a whole "...shows that the existence of the fact to be proven is more likely than not." 20 C.F.R. § 404.901.

Second, the Commissioner maintains that the objective evidence of record documented mild abnormalities. However, the Commissioner fails to address the lumbar x-ray from June 2015 which showed osteoarthritic degenerative changes of the lumbar spine and the right knee x-ray from June 2015 revealed mild to moderate patellofemoral osteoarthritic degenerative changes, which support Plaintiff's allegations of back and knee pain. (AR 433-34.) The Commissioner also did not address Plaintiff's argument that contrary to SSR 16-3p, the ALJ failed to consider that Plaintiff's allegations of back and knee pain were supported by his morbid obesity, limited activities of daily living and prescription pain medication. *See Nagel v. Colvin*, 2016 WL 1104840 *4 (N.D.Ind., Mar.22, 2016) ("The strength of Plaintiff's argument is bolstered by the Commissioner's failure to respond to this argument.").

Third, the Commissioner contends that the record shows that Plaintiff's side effects were not significant enough that his providers observed them. This is another mischaracterization of the record that compromises the ALJ's decision. *Golembiewski*, 322 F.3d at 916. At the hearing, Plaintiff testified that due to the side-effects from his medications he had difficulty staying alert at his job, but that he was alert and oriented during his physical examinations. (AR 40.) Contrary to the ALJ's conclusion, the record did contain evidence of side effects in the form of Plaintiff's testimony. The ALJ was required to determine if it was reasonable that any of the medications

that Plaintiff took for his impairments produced the drowsiness that he alleged, and if she concluded that medications did cause drowsiness, the effect that drowsiness had on Plaintiff's ability to perform work tasks. SSR 16-3p. *Accord Hollis- Earl v. Colvin*, 2014 WL 1395759, *10 (S.D. Ill. 2014); *Jackson v. Colvin*, 2014 WL 1613377, *10 (S.D. Ill. 2014); *Stout v. Astrue*, 2010 WL 1610389, *11 (S.D. Ill. 2010).

Fourth, the Commissioner asserts that the ALJ found that Plaintiff's daily activities were not consistent with an individual who is unable to perform a reduced range of light work. The Commissioner maintains that the ALJ's decision shows that she considered Plaintiff's daily activities as just one factor in evaluating his subjective complaints. An ALJ must consider a claimant's activities of daily living when she assesses a claimant's subjective allegations. SSR 16-3p. If an ALJ finds that a claimant's activities of daily living are inconsistent with his subjective allegations, an ALJ must identify which particular activity of daily living contradicts a particular subjective allegation and an ALJ must identify the contradiction. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons...and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). An ALJ must consider any limitations that a claimant encounters when he attempts to perform activities of daily living. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). Here, the ALJ failed to explain how any of Plaintiff's activities of daily living contradicted his allegations of disabling pain and symptoms. Plaintiff testified that his

family members drove him to his appointments. (AR 96.) He was only able to do his laundry and cook and he spent the majority of his day in his recliner. (AR 100, 115.) The Commissioner did not explain how these limited activities showed that Plaintiff was capable of performing a reduced range of light work. *Moss*, 555 F.3d at 562.

The Commissioner maintains that while evaluating the third-party function report completed by Plaintiff's father, the ALJ properly considered the nature of the relationship between Plaintiff and his father. But familial relationship alone is an insufficient basis on which to reject such third-party reports. *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) ("The administrative law judge should have made clear whether he believed the fiancée's testimony or not, or which part he believed, or whether he had no idea how much of what she said was worthy of belief.") The Commissioner failed to address Plaintiff's argument that the ALJ's rejection of the function report completed by Plaintiff's father was in violation of SSR 16-3p and that the ALJ did not explain which parts of Plaintiff's father's Function report she accepted or rejected. *See Dogan v. Astrue*, 751 F. Supp. 2d 1029, 1042 (N.D. Ind., June 3, 2010) (collecting 7th Circuit district court cases holding that the Commissioner's failure to address one of a claimant's argument amounts to a waiver of her right to do so). Clearly, in light of the above, remand is warranted on the issues raised by Plaintiff.

<u>Conclusion</u>

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED for further proceedings consistent with this Order.

Entered: August 28, 2019.

s/ William C.  Lee
William C. Lee, Judge
United States District Court
